## Royer's Estate.

Argued April 17, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

424

*B. R. Stewart,* with him *H. Eugene Gardner,* for appellant.

*Truman D. Wade* and *Wallace M. Keely,* for appellees, were not heard.

PER CURIAM, May 6, 1940:

In this case appellant contends that when Annie S. Royer, then aged 82 years, made her will on September 13, 1932, giving the residue of her estate to her son, John W. Royer, she was under such duress and restraint emanating from him that the court below erred in not granting a precept to try the issue. Mrs. Royer's net estate was worth about $21,000. The residue, after certain pecuniary bequests, amounted to about $14,000.

This court has frequently declared the standard of proof which is required in cases of this character to justify the granting of a precept to determine the question of undue influence. In *Phillips' Est.,* 244 Pa. 35, 43, 90 A. 457, this court said: "When a will is attacked on the ground of undue influence, it is necessary to bear in mind the meaning of the term; as a legal phrase it is used as denoting something violative of legal duty. The word 'influence' does not refer to any and every line of conduct capable of disposing in one's favor a fully and self directing mind, but to a control acquired over another which virtually destroys his free agency. In order to constitute undue influence sufficient to void a will, there must be imprisonment of the body or mind, fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery, or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of the will." See also *Tetlow's Est.,* 269 Pa. 486, 112 A. 758. In *Hook's Est.,* 207 Pa. 203, 56 A. 428, we declared: "To set aside a will on this ground [undue influence] where the testator is in full possession of his faculties and

his testamentary capacity admitted or established, the evidence must be clear and strong. Mere opinions or suspicions or belief not founded on facts testified to will not be sufficient: *Englert v. Englert,* 198 Pa. 326 [47 A. 940]."

The court below correctly found not only that the contestant failed to meet the burden of proof resting upon her but also that the evidence affirmatively established decedent's testamentary capacity and her mental freedom of action. The court aptly said: "The sole question involved is whether on September 13, 1932, the decedent was under any duress or restraint when she executed the will in question. As to this single issue the only direct testimony thereon is that of the two subscribing witnesses. The most outstanding feature of the case is the character and reliability of these two totally disinterested witnesses. From the observation of the court, these witnesses, and the manner of their testifying, convinces the court beyond any question of doubt as to their absolute credibility. These two women were of the highest type and their probity, integrity, and character are beyond question. . . . The circumstances of the execution of the will described by Miss Moore and Miss Donoghue do not indicate a testatrix in fear of any person or under the domination of any person. . . . The intrinsic evidence of the will itself . . . shows clear discrimination on the part of the decedent coming to the conclusion as to the distribution of her property after death which she deemed to be right and just. Nor is there anything in it that is shocking to one's sense of right or justice in the manner of her disposition. . . . From 1924 to the time of her death in 1936 she had resided continuously with her son John who, together with his wife, had taken care of her with the tenderest and kindest solicitude. . . . Apparently in her opinion it was only fair to leave them approximately two-thirds of her estate and to leave the other third divided amongst her other children and grand-

children. We can find not the slightest evidence of restraint upon this decedent at or near the time of the execution of the will. . . . We can find no evidence whatever in this record that he [son John] was such a confidential agent of this decedent as to change his obligation or responsibility with regard to her. It is true that he assisted her with her affairs, and, in fact, was constantly taking care of her, taking her where she desired to go, and rendering her every service possible. There is no evidence, however, that we can find in the record, that all her decisions were not her own as to any important matter, and that she did not retain full control of her property and decisions."

The decree is affirmed at appellant's cost.